# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LINDA BLAIKIE,

       Plaintiff,

v.                              CASE NO:  8:09-cv-1770-T-26MAP

RSIGHT, INC., STAFFING CONCEPTS,
INC., and AETNA HEALTH, INC.,

       Defendants.

_____/

## O R D E R

**THIS CAUSE** comes before the Court on Defendant Aetna Health, Inc.'s Motion

for Summary Judgment and supporting memorandum of law (Dkt. 47) and Statement of

Undisputed Facts with supporting exhibits (Dkt. 48), Defendant Staffing Concepts, Inc.'s

Motion for Summary Judgment and supporting memorandum of law (Dkt. 52), and

Plaintiff's Memoranda in Opposition to the Motions (Dkts. 55 & 57) and Statements of

Disputed Facts (Dkts. 56 & 58) with supporting exhibits (Dkts. 59, 50, 61, & 62).

## Background & Claims

Plaintiff filed this lawsuit on August 28, 2009, based on alleged violations of the

Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA"), with

respect to the continuation of Plaintiff's health benefits through the Consolidated

Omnibus Budget Reconciliation Act ("COBRA"), following her termination of

employment with Defendant Rsight, Inc. ("RSight") on April 11, 2004.[1]  This is

Plaintiff's second lawsuit against the Defendants, both cases arising from the same event:

termination of Plaintiff's medical benefit coverage due to non-payment of premium.

Plaintiff was employed by RSight, who had an agreement with Defendant Staffing

Concepts, Inc. ("SCI") that included arranging for employee benefits for RSight's

employees.  Through this arrangement, Plaintiff obtained medical benefit coverage

through Defendant's Aetna Health, Inc.'s ("Aetna") health maintenance organization

pursuant to a group agreement between Aetna and SCI ("the Plan").  After Plaintiff was

no longer working, she became eligible for continuation coverage through COBRA,

provided that she timely paid her premiums.  Defendants terminated her coverage on

September 1, 2004, on grounds that Plaintiff failed to timely pay the premiums.

Plaintiff originally brought three counts against Defendants in this action:  breach

of fiduciary duty, equitable estoppel, and waiver/estoppel, seeking compensatory

damages, attorney's fees, costs, and equitable relief.  Plaintiff dropped the claim for

breach of fiduciary duty after being served with Defendants' answer and affirmative

defenses.  (Dkt. 17.)  Although Plaintiff couches her claims for relief in equitable terms,

the claims actually rest on alleged medical costs for which she seeks reimbursement from

Defendants inasmuch as she asserts that Defendants failed to properly account for

---

[1]  Plaintiff suffers from a medical condition known as Alpha-1 Antitrypsin Deficiency, which has caused deterioration of her joints and spine and rendered her disabled and unable to continue her employment with RSight, Inc.  She was receiving life sustaining treatments due to her COBRA health insurance benefits.

premium payments paid to continue her COBRA benefits, which resulted in her being terminated from the benefits Plan. Further, she maintains that Defendants should compensate her in an amount equal to the costs of her medical treatment multiplied by the time she would have been eligible to receive COBRA benefits.

## Summary Judgment Standard

Defendants seek the entry of summary judgment on grounds that Plaintiff failed to exhaust her administrative remedies prior to commencing suit, that her claims are impermissible under ERISA and refuted by the record evidence, and that Plaintiff's claims are barred by the statute of limitations. Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The Court, having carefully considered the parties' submissions, finds that no genuine issues exist for trial and that Defendants Aetna and SCI. are entitled to the entry of final summary judgment on Plaintiff's claims.

## Discussion

Plaintiff was required to exhaust her administrative remedies, as provided for in the ERISA Plan, prior to commencing suit in federal court. Perrino v. Southern Bell Tel.

& Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000) (holding that "our law is well-settled that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court") (internal quotation marks omitted); see also Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1223 (11th Cir. 2008) (holding that "the law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court").  This requirement is to be strictly enforced, with courts recognizing only narrow exceptions based on exceptional circumstances.  Perrino, 209 F.3d at 1318.  The Eleventh Circuit recognizes exceptions "only when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place."  Id. at 1316 (internal citations and quotation marks omitted).  This requirement is based upon several important policy considerations, and has been found to be consistent with Congressional intent.  Id. at 1315.  As the Eleventh Circuit explained, in Mason v. Continental Group, Inc.:

> Compelling considerations exist for plaintiffs to exhaust administrative
> remedies prior to instituting a lawsuit.  Administrative claim-resolution
> procedures reduce the number of frivolous lawsuits under ERISA, minimize
> the cost of dispute resolution, enhance the plan's trustees' ability to carry
> out their fiduciary duties expertly and efficiently by preventing premature
> judicial intervention in the decision making process, and allow prior fully
> considered actions by pension plan trustees to assist courts if the dispute is
> eventually litigated.

763 F.2d 1219, 1227 (11th Cir. 1985). Therefore, when a plaintiff fails to exhaust her administrative remedies, her claims are barred unless one of the exceptions is met. Tindell v. Tree of Life, Inc., 672 F. Supp. 2d 1300, 1306 (M.D. Fla. 2009).

The administrative remedies in this case are found in the Certificate of Coverage ("Certificate"), which is part of the Group Agreement between Aetna and SCI and which provided for the benefits on which Plaintiff sues in this action. (Dkt. 1, Ex A.) The Certificate provides for two levels of appeal before a lawsuit may be initiated. (See id.) Plaintiff was also informed of this appeals process in writing through Aetna's initial notice to Plaintiff acknowledging her lawyer's appeal on her behalf. (See Dkt. 50, Ex. 2, Malone Aff. ¶ 4; Ex. A., February 23, 2006 letter.) Plaintiff failed to exhaust these administrative remedies by not timely requesting a Level II appeal. (See Malone Aff. at ¶ 7; Ex. D.) Plaintiff admits that the Certificate required her to comply with the appeals process as a condition precedent to filing suit. (See Dkt. 50, Ex. 5, Plaintiff's Response to Request for Admission No. 7.) Plaintiff fails to assert any of the narrow exceptions excusing her compliance with the process. As a result, Plaintiff's claims are barred and Aetna's decision in the Level I appeal is final and binding. See Lenoir v. BellSouth Telecommunications, Inc., 2006 WL 2982879 (N.D. Ga. 2006) (holding that failure to comply with Aetna second level appeal requirement resulted in plaintiff's failure to exhaust administrative remedies as condition precedent to ERISA claim); Tindell, 672 F. Supp. 2d at 1306; see also Palmeri v. Coca-Cola Company, 2006 WL 2523027 (N.D. Ga.

2006); <u>McPhillips v. Blue Cross Blue Shield of Alabama</u>, 2010 WL 3833950, at *4 (M.D. Ala. 2010) (holding that plaintiff's failure to follow the administrative appeals process spelled out in the group plan demonstrated a failure to exhaust administrative remedies); <u>Noren v. Jefferson Pilot Financial Ins. Co.</u>, 2010 WL 1841892, at *1 (9th Cir. 2010) (identifying two-level internal administrative review process required by plan and rejecting bare assertion by plaintiff that a second level appeal would have been futile).

Plaintiff did not claim that requesting a Level II appeal would be futile, would provide an inadequate remedy, or that she was denied meaningful access to the administrative scheme in place. Moreover, any claim of futility is refuted by the fact that Plaintiff initially followed the administrative procedures outlined in the Certificate and completed the first level of appeal, which Aetna denied on March 22, 2006. (<u>See</u> Malone Aff., at ¶5; Ex. B, March 22, 2006 letter.) The availability and utility of the administrative scheme is also evidenced, as Defendants assert, by the fact that Plaintiff attempted to request a Level II appeal, but despite being represented by counsel, being provided a detailed overview of the appeals process, which letter includes a detailed description of the appeals procedure), and being expressly informed in the Level I Appeal Resolution Letter that she had 60 days from the receipt of the same to request a Level II appeal, Plaintiff did not request her Level II appeal until well beyond the 60 day period required under the Certificate. (<u>See</u> Malone Aff., at ¶ 4; ¶ 7; Ex. A, February 23, 2006 letter; Ex. D, September 27, 2006 letter.) Simply put, Plaintiff did not make her request

for a Level II appeal until July 20, 2006, nearly 120 days after the March 22, 2006 decision denying the first level appeal.  (See id.)

The Court agrees with Defendants that to allow Plaintiff's disregard of the Plan terms governing appeal procedures would not only be contrary to the well-settled law in this circuit, but would be contrary to the purposes for which the exhaustion of remedies requirement is imposed.  See Springer v. Wal-Mart Associates' Group Health Plan, 908 F.2d 897, 900 (11th Cir. 1990) (holding that "the very premise of the exhaustion requirement, therefore, is that the right to seek federal court review matures only after that requirement has been appropriately satisfied or otherwise excused."); see also, Perrino, 209 F.3d at 1318 (holding "therefore, if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit."); Palmeri, 2006 WL 2523027, at *4-6 (exhaustion of both levels of appeal required in a group insurance agreement are required to be deemed to have fully exhausted administrative remedies as required under ERISA).

Plaintiff urges that her claims should not be deemed unexhausted, but notwithstanding her failure to exhaust the available administrative remedies, her claims are also impermissible under ERISA.  As ERISA preempts all state common law claims relating to employee benefit plans, Plaintiff can only look to the federal common law of equitable estoppel to maintain this claim.  See Novak v. Irwin Yacht and Marine Corp.,

986 F.2d 468, 472 (11th Cir. 1993) (holding that "since ERISA preempts all state common law claims relating to employee benefit plans, we must look to the federal common law of equitable estoppel.") As Defendants assert, a claim of equitable estoppel under ERISA can only be asserted if there is (1) an ambiguous provision in the plan and (2) an oral representation interpreting the ambiguous provision. Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1090 (11th Cir. 1999); Kobold v. Aetna U.S. Healthcare, Inc., 258 F. Supp. 2d 1317, 1322 (M.D. Fla. 2003) (holding that "absent both an ambiguous provision and an oral representation interpreting that ambiguous provision, equitable estoppel may not be asserted under ERISA"); Conner v. Bayfront Health Sys., Inc., No.8:06-CV-1291-T-23MAP, 2007 WL 187801, at * 3 (M.D. Fla. 2007) (holding that "a claim of equitable estoppel under ERISA is 'only available when (1) the provisions of the plan at issue are ambiguous and (2) representations are made which constitute an oral interpretation of the ambiguity.'") (quoting Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1090 (11th Cir. 1999)); see also Novak, 986 F.2d at 472 (holding that "for a representation to be an interpretation of a plan, the relevant provisions of the plan must be ambiguous, that is to say, reasonable persons could disagree as to the provisions' meaning and effect."); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994) (citing Kane v. Aetna Life Ins. Co., 893 F.2d 1283, 1285-86 (11th Cir. 1990) and finding that "estoppel is not available either for oral modifications (as opposed to interpretations) or when the written plan is unambiguous.")

Plaintiff fails to even set forth any provision of the Plan that is ambiguous, let alone that any representation about an ambiguity was made to Plaintiff by Defendants. Although Plaintiff alleges in Count II that Defendants made representations that she "owed a double payment to keep her health insurance in full force and effect," (Dkt. 1, ¶ 28), such alleged representations do not interpret an ambiguous provision of the Plan. Plaintiff also points to an October 18, 2004, letter from Aetna verifying coverage and authorization for Plaintiff to receive treatment from October 2004 through April 2005.. (Dkt. 1, ¶¶ 35-35.)  However, the letter is neither an interpretation of an ambiguous plan provision nor a modification or amendment of a plan provision, but rather the letter is simply a confirmation of Plaintiff's insured status based upon the information available to Aetna at the time the letter was generated.  See Garcia v. Av-Med, Inc., 958 F. Supp. 592, 594 (S.D. Fla. 1997) (holding that assurances of services being covered under the plan is not an interpretation of an ambiguous plan provision; Novak, 986 F.2d at 472 (holding that equitable estoppel does not apply because confirmation of coverage and authorization of medical expenses for plaintiff cannot be an interpretation of an ambiguous policy provision but only an oral modification of the plan).

Under the Group Agreement between Aetna and SCI, SCI agreed to furnish Aetna with information on which Aetna would rely, to include enrollment and eligibility information, on a monthly basis, necessary to administer the Group Agreement.  (Dkt. 48, Ex. 1, ¶ 2.)  When Aetna sent the coverage verification and authorization letter to

Plaintiff, SCI had not yet notified Aetna that Plaintiff's coverage should have been terminated.  (Id. at ¶ 4.)  In the absence of both an ambiguous provision and a representation interpreting that provision, Plaintiff cannot assert a claim for equitable estoppel.  Kobold, 258 F. Supp. 2d at 1322 (holding that plaintiff is precluded from pursuing a theory of equitable estoppel where the complaint fails to assert an ambiguous provision in the plan, nor does it assert an oral representation interpreting the plan was made to plaintiff); see also, Conner, 2007 WL 187801, at *3 (holding that "absent both an ambiguous provision and an oral representation interpreting that ambiguous provision, [Plaintiff] may not assert a claim for equitable estoppel under ERISA.").

Counts II and III, both brought under 29 U.S.C. § 1132(a)(3)(B), also fail as a matter of law because both are legal in nature.  Section 1132(a)(3) provides, in pertinent part, that "a participant, beneficiary, or fiduciary" may bring a civil action "(B) to obtain other appropriate equitable relief (i) to redress such violations [of this subchapter or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan."  The Supreme Court has held that "'equitable relief' under this section means 'something less than all relief' and refers to 'those categories of relief that were typically available in equity.'"  International Painters and Allied Trades Indus. Pension Fund v. Aragones, 643 F. Supp. 2d 1329, 1337 (M.D. Fla. 2008) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256, 258 n. 8 (1993) (emphasis in the original).  While labeled as "equitable" claims under section 1132(a)(3)(B), Plaintiff is actually seeking

impermissible "legal" relief in the form of compensatory damages. The Supreme Court has made clear that "the remedies available under § [1132(a)(3)] are equitable only and do not extend to the award of traditional compensatory damages even if such are couched in equitable terms." Larsen v. Airtran Airways, Inc., 2009 WL 4827522, at *6 (M.D. Fla. 2009) (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 221 (2002)); see also, Aragones, 643 F. Supp. 2d at 1338 (M.D. Fla. 2008) (holding that "claims such as those for injunctive relief, specific performance, or restitution are not necessarily available in equity where the claims are really *legal* in nature, such as where the claim is for an injunction to compel the payment of money past due under a contract . . . or restitution as payment in return for a benefit conferred") (emphasis in the original). Whether a remedy is legal or equitable depends on "the basis for the plaintiff's claim and the nature of the underlying remedies sought." Knudson, 534 U.S. at 213 (internal quotation omitted). However, a "claim for money due and owing under a contract is quintessentially an action at law." Id. at 210 (internal quotations omitted). As the Eighth Circuit noted in distinguishing between equitable and compensatory relief under section 1132(a)(3), compensatory damages "focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944 (8th Cir. 1999).

In response to Interrogatories issued by SCI, Plaintiff stated that compensatory

damages were no longer being sought after dropping count I, but rather that she "intends to seek restitution/disgorgement of all amounts saved by the Defendants by virtue of the actions/omissions alleged in the complaint." (See Dkt. 50, Ex. 6, Plaintiff's Answers to SCI's Interrogatories at Interrogatory Answer 2.) While this description of Plaintiff's "equitable" relief alone reveals the actual compensatory nature of Plaintiff's claims, the compensatory nature is only buttressed by the very next Interrogatory Answer from Plaintiff, stating that "calculations of damages will include multiplying the costs of Plaintiff's treatment by the amount of time she would have been entitled to receive COBRA benefits, plus any medical bills that were incurred and either paid out of pocket by Plaintiff, or which went unpaid." (See id. at Plaintiff's Answer to Interrogatory 3; Plaintiff's Answer to Interrogatory 14 (stating that Plaintiff seeks equitable relief for "doctor expenses, prescription expenses, therapy expenses -- none of which were paid by insurance from the last payment by Aetna, Inc. until Medicare was approved and began paying.") Plaintiff's Interrogatory Answers are consistent with Plaintiff's Rule 26(a)(1)(A)(iii) disclosures produced in this case, which identify, albeit without the requisite computation required by the Rule, Plaintiff's damages as Plaintiff's "unpaid medical bills" and "amounts to fairly compensate Ms. Blaikie." (See Dkt. 50, Ex. 7, § C.) Thus, Plaintiff is not truly seeking the equitable relief contemplated by section 1132(a)(3)(B).

As the Supreme Court noted in <u>Knudson</u>, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." 534 U.S. at 214. In other words, where the money or property claimed to belong to a plaintiff can clearly be traced to particular funds or property in the defendant's possession, a plaintiff can seek restitution in equity, "ordinarily in the form of a constructive trust or an equitable lien." <u>Aragones</u>, 643 F. Supp. 2d at 1338. "In contrast, where a plaintiff cannot assert title or right to possession of particular property, but can show grounds for the imposition of liability on the defendant to pay the plaintiff a sum of money, the remedy is legal in nature." <u>Id.</u> Here, Plaintiff does not assert that she is entitled to particular funds that can be clearly traced to funds in Defendants' possession, but rather seeks to impose liability on Defendants to pay a sum of money based on her alleged losses.

The record evidence shows that Plaintiff never acted to her detriment based upon a representation by SCI. Under ERISA law, "[e]stoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated." <u>Glass v. United Omaha Life Ins. Co.</u>, 33 F.3d 1341, 1347 (11th Cir. 1994). In count II, which is labeled as "Equitable Estoppel," Plaintiff alleges that Defendants collectively made false representations that Plaintiff "owed a double payment to keep her health insurance in full force and effect." (Dkt. 1, ¶ 27.) She asserts that she "relied on Defendants' representation that a double payment was required to keep

her health insurance in full force and effect, instead of tendering a single monthly premium payment." (Id. at ¶ 29.)  Plaintiff concludes her claim by alleging that she "relied on those representations to her detriment, and when she tendered the double premium payment, it was rejected and her health insurance benefits were terminated." (Id. at ¶ 31).  There is no communication by SCI to Plaintiff insisting on the alleged "double payment," SCI's June 22, 2004, notification to Plaintiff that her premium payment, which was due on June 1, 2004, had not yet been received and that it must be received by July 31, 2004 to avoid loss of coverage.  (See Dkt. 50, Ex. 1, Edwards Aff., ¶ 13; Ex. C.)  By that deadline, the July 2004 premium would have been past due from July 1, 2004, per the premium payment schedule explained to Plaintiff in her initial written COBRA enrollment notice from SCI.  (See id. at ¶ 10; Ex. B.)  Contrary to Plaintiff's allegations, Plaintiff's July 27, 2004, payment for two months of premium charges was not rejected, but instead was accepted for health benefits coverage issued during those months.  As is stated in the written notice from SCI dated August 12, 2004, SCI then reminded Plaintiff of her August 2004 premium, which was due by August 1, 2004.  (See (See id. at  ¶ 15; Ex. D.)  The record is clear that Plaintiff did not make another premium payment until October 15, 2004, for the September 2004 premium.

Even assuming that SCI made the representation to Plaintiff that two premium payments were due and outstanding, as Defendants argue, SCI did nothing to repudiate such representations.  Regardless, Plaintiff was notified in writing about the premium

payment schedule. Consistent with that schedule, SCI issued a notice of COBRA termination in a letter to Plaintiff dated September 7, 2004, over a month after the August 2004 premium was due and beyond the associated grace period. (See id. at ¶ 17; Ex. E.) As described above, Plaintiff's COBRA coverage was ultimately reinstated for the month of August 2004, upon discovery of Plaintiff's initial erred premium payment in May 2004. The crediting of Plaintiff's initial premium payment does not alter the fact that Plaintiff ultimately failed to comply with the payment schedule required of her. Both the Complaint and the record fails demonstrate an inducement of action by Plaintiff that resulted in harm to Plaintiff. Thus, the Court must agree with Defendants that not only is this "Equitable Estoppel" claim legally impermissible, it is also factually inconsistent and insufficient to state a claim.

In count III, Plaintiff asserts a claim against all named Defendants, labeled "Waiver/Estoppel," challenging the legal effect of an alleged October 18, 2004, coverage verification notice. Plaintiff generally alleges that "on or about October 18, 2004, Defendants issued a coverage verification and authorization for Plaintiff to receive treatment from October 2004 through April 2005." However, while Plaintiff does not attach the October 18, 2004, document to her complaint, the actual document that is the subject of count III reflects that the document was only authored by Defendant, Aetna. (Dkt. 50, Ex. 4; see also Ex. 6, Plaintiff's Supplemental Answer to Interrogatory 10.) Thus, Plaintiff's claim, even if it were legally tenable, does not lie against SCI or Rsight.

"Waiver is the voluntary, intentional relinquishment of a known right." Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994) (rejecting waiver claim in the ERISA context without sufficient evidence of an intentional relinquishment of a known right or of any unjust benefit circumstance). The October 18, 2004, coverage verification cannot operate as a waiver against SCI in its rejection of Plaintiff's untimely October 15, 2004, premium payment, where SCI did not author the document and over a month earlier had issued a notice of termination of coverage. This is especially true when SCI repeatedly notified Plaintiff in advance of that termination of her premium payment obligations and consequences of failure to make payment timely. Moreover, there was no retention of Plaintiff's premium payments by SCI while denying benefit coverage for the periods associated with those premium payments, which is the typical "waiver" scenario in the ERISA context.

With respect to Aetna, as previously discussed, Aetna relied on SCI to provide necessary information to administer the Group Agreement and SCI had not yet notified Aetna that Plaintiff's coverage should have been terminated at the time that Aetna sent the coverage verification and authorization letter. Aetna did not know when it mailed the letter that Plaintiff's coverage had been terminated and, thus, without receiving this necessary information, Aetna could not have knowingly and intentionally waived provisions of the Group Agreement. In addition, Plaintiff fails to present any evidence that Aetna received unjust benefits. Furthermore, as argued above, the ERISA laws do

not recognize such a "waiver/estoppel" claim as pled by Plaintiff, where the true relief sought is not equitable in nature.

Finally, Plaintiff's claims, labeled as being brought pursuant to 29 U.S.C. § 1132(a)(3)(B), are also barred by the statute of limitations. Despite Plaintiff's March 3, 2010, voluntary dismissal of count I for Breach of Fiduciary Duty, counts II and III continue to incorporate all paragraphs including those asserting breach of fiduciary duty against all Defendants. (Dkt. 1, pp. 5-6.) The relief sought by Plaintiff is, in reality, compensatory in nature, consistent with Plaintiff's once-pled action at law. To the extent that counts II and III are actually premised on allegations of breach of fiduciary duty, such claims are, as argued by Defendants, governed by the statute of limitations set forth in 29 U.S.C. § 1113. Section 1113 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of --
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Under this section, and contrary to Plaintiff's assertions, it is the earlier date that controls. Thus, the relevant inquiry for the Court goes to when Plaintiff acquired actual knowledge of the supposed fiduciary breach. Here, Plaintiff appears to take issue with

the denial of her COBRA coverage, alleging in her complaint that a dispute over payment of premiums existed sometime prior to November 2004.  (Dkt. 1, ¶ 20.)  In her Supplemental Answers to Interrogatories (as compelled by the Court), Plaintiff further states that her dispute began after receiving SCI's June 22, 2004, correspondence.  (Dkt. 50, Ex. 6, Plaintiff's Supplemental Answer to Interrogatory 8.)  Plaintiff's COBRA coverage was ultimately terminated in a letter dated September 7, 2004.  To the extent that a breach of fiduciary duty is the foundation to Plaintiff's claims, it is apparent that this lawsuit was not brought within three years after the earliest date on which Plaintiff had actual knowledge of the same.  Such claims became time-barred in November of 2007, at the latest, and this lawsuit was not filed until August 28, 2009.  See Gelles v. Skrotsky, 983 F.Supp. 1398, 1405 (M.D. Fla. 1997) (dismissing ERISA claim where plaintiff's actual knowledge of fiduciary breach in 1991 barred action filed in 1996).

Even if counts II and III could somehow be characterized as true equitable claims, independent from the alleged breach of fiduciary duty and compensatory damages, these claims remain time-barred.  The Eleventh Circuit has held that "because 29 U.S.C. § 1132 does not specify a statute of limitations, federal courts must look to the most analogous state law statute of limitations for the governance of suits brought pursuant to ERISA's civil enforcement provisions."  Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1551 n. 12 (11th Cir. 1990); see also, Harrison v. Digital Health Plan, 183 F.3d 1235, 1238 (11th Cir. 1999) (stating that when Congress has not established a statute of

limitations, the settled practice is to borrow the forum state's limitations period for the most analogous state law cause of action when it is not inconsistent with federal law or policy to do so, and there is not a more closely analogous federal statute of limitations). In selecting the state cause of action most analogous to the federal cause of action, "federal courts must first characterize the essence of the claim in the pending case." Byrd v. MacPapers, Inc., 961 F.2d 157, 159 (11th Cir. 1992) (internal citations omitted). The characterization of the federal claim is "derived from the elements of the cause of action, and Congress' purpose in providing it." Id. Here, Plaintiff's claims present an action founded on statutory liability, subject to a four-year statute of limitations under section 95.11(3)(f), Florida Statutes. Cf. Byrd, 961 F.2d at 159-60 (11th Cir. 1992) (applying the four-year statute of limitations of § 95.11(3)(f) to a claim arising under 29 U.S.C. § 1140 for wrongful discharge from a benefits plan); see also, Daniels v. Life Ins. Co. of N. Am., 2009 WL 604128, at * 3 (W.D. Ky. 2009) (holding that "ERISA is more akin to a statutory scheme such as Workers' Compensation than to any common law cause of action. Therefore, under Kentucky law, the statutory liability provision is the most analogous statute of limitations.").

In the Eleventh Circuit, a cause of action under ERISA accrues when an application for benefits is denied. Hoover v. Bank of Am. Corp., 286 F. Supp. 2d 1326, 1334 (M.D. Fla. 2003) (citing Paris v. Profit Sharing Plan for Employees of Howard B.

Wolf, Inc., 637 F.2d 357, 361 (5th Cir. 1981)[2].  As stated above, Plaintiff was notified in a

letter dated September 7, 2004, that her benefits coverage was terminated effective

August 1, 2004.  (See Dkt. 50, Ex. 1, Edwards Aff., ¶ 17, Ex. E.)  After extending

Plaintiff's COBRA coverage for one month, Plaintiff was again notified, no later than

March of 2005, that her benefits coverage was terminated effective August 31, 2004.

(See Ex. 1, Edwards Aff., ¶ 20; Ex. H.)  Thus, under Eleventh Circuit precedent,

Plaintiff's cause of action accrued no later than when she received either of these

termination notices. Plaintiff filed this suit on August 28, 2009, well beyond the four-

year statute of limitations period.

As Defendants point out, Plaintiff even acknowledged the statute of limitation

issues in this matter, when in response to the Court's Order to Show Cause (Dkt 4), she

stated:  "The events giving rise to the instant action occurred during calendar year 2004

and if the Complaint was dismissed as to Aetna Health, Inc., statute of limitations issues

could forever bar the Plaintiff from re-filing this action against that Defendant."  (Dkt. 5,

¶ 12.)  Although written as a justification for more time to serve Aetna with a summons in

this action, the effect of Plaintiff's admission cannot be overlooked as to all Defendants.

Plaintiff's claims are, therefore, barred by the statute of limitations.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

---

[2]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit adopted as binding precedent all decisions issued by the former Fifth Circuit
before October 1, 1981.

Defendant Aetna Health, Inc.'s Motion for Summary Judgment (Dkt. 47) and

Defendant Staffing Concepts, Inc.'s Motion for Summary Judgment (Dkt. 52) are granted.

The Clerk is directed to enter final judgment in favor of Defendant Aetna Health, Inc.,

and Defendant Staffing Concepts, Inc., as to all of Plaintiff's claims against them.  The

Clerk is further directed to close this case.

 **DONE AND ORDERED** at Tampa, Florida, on November 21, 2011.


   *s/Richard A. Lazzara*
   **RICHARD A. LAZZARA**
   **UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record